In the Matter of the Application of WILLIAM PATTERSON, as Chairman of the Joint Buffalo City Board United Spanish War Veterans, an Unincorporated Association Consisting of More Than Seven Persons, Petitioner, Respondent, for an Order of Mandamus Directed to the COMMON COUNCIL OF THE CITY OF BUFFALO, ERIE COUNTY, NEW YORK, Appellant, to Grant Relief to Veterans of the Spanish War upon Requests of the Joint Buffalo City Board United Spanish War Veterans or upon the Requests of the Committee upon Relief.

Fourth Department, May 4, 1938.

*Gregory U. Harmon, Corporation Counsel [Jeremiah J. Hurley, Assistant Corporation Counsel, of counsel], for the appellant.*

*James O. Moore, for the respondent.*

DOWLING, J.   On April 14, 1937, the petitioner moved at Special Term " for an order of peremptory mandamus, directed to the Common Council of the city of Buffalo, compelling it to grant relief to veterans of the Spanish War upon requests of the Joint Buffalo City Board United Spanish War Veterans, or upon the requests of the Committee upon Relief."

From the petition we learn that in 1903 the Buffalo posts of the Grand Army of the Republic had an executive and memorial committee whose duty it was to administer relief to indigent soldiers of the Civil war, their widows and dependents residing in Buffalo. That in 1903 there were five camps of veterans of the Spanish American war in Buffalo, each of which had a commander, a quartermaster and a full quota of camp officers.   Unlike the Grand Army of the Republic, the camps had no central organization through which to function as a unit.   In 1903 the camps, in keeping with the rules and regulations of the national body, organized a committee modelled on that of the Grand Army of the Republic and christened it " Joint Buffalo City Board United Spanish War Veterans."   This new organization appointed a relief committee and a director of relief.   The national body approved of the arrangement, permitted the organization to use the name adopted instead of " municipal council " and recognized it as a camp and as a municipal council possessing the powers and prerogatives exercised by commanders, quartermasters, treasurers and relief committees of regular camps.   From 1903 to July, 1936, the relief committee of the central body administered relief to all Spanish war veterans, their widows and dependents residing in Buffalo.   The city of Buffalo provided offices for the relief committee in its new municipal building.   The committee, in the beginning, had its own staff of employees.   Gradually these were replaced by regular city appointees.   From 1914 until his death in July, 1936, Albert Hahn, a Spanish war veteran, represented the committee on relief and the board of social welfare of the city of Buffalo in the administration of relief to Spanish war veterans and their dependents. He was on the payroll of the city.   Upon his death, William Hildebrand, chairman of the relief committee of the Joint Buffalo

City Board United Spanish War Veterans, visited the offices of the committee in the municipal building and sought to take possession. The city employees in charge, at the instance of the board of social welfare of Buffalo, refused to deliver possession. The common council of the city of Buffalo likewise refused to recognize the committee on relief or its right to administer relief in Buffalo and it refused to deliver to said committee its books, papers, records and vouchers. Since the death of Hahn, one Joseph Bohn, a regular city employee, has administered relief to Spanish war veterans, their widows and dependents residing in Buffalo, to the exclusion of said committee on relief.

The common council opposed the motion on the following grounds: (1) No camp in Buffalo was qualified to administer relief to Spanish war veterans for the reason no camp had filed the notice and undertaking required by sections 117 and 118 of the Public Welfare Law; (2) that, since the death of Hahn, the committee on relief had presented no demand or request to the common council except that it employ a Spanish war veteran at an annual salary of $2,487.50; (3) the Spanish war veterans in Buffalo are not equipped or organized in accordance with the provisions of the Public Welfare Law to administer relief; (4) the board of social welfare of Buffalo is charged with administering relief in Buffalo, including relief to veterans, their widows and dependents; (5) in 1914 the common council created two bureaus charged with the duty of administering relief to veterans of the Grand Army of the Republic and the Spanish-American war, their widows and dependents; these bureaus have administered such relief since their creation; (6) the common council appropriated and made available for the fiscal year 1936–1937 the sum of $86,000 for veteran relief in Buffalo; (7) veteran relief in Buffalo has always been administered separate and apart from relief accorded to the general poor of the city; (8) the posts and camps in Buffalo have failed to function in respect to the administration of veteran relief.

The learned court rendered a decision holding that petitioner was qualified under the Public Welfare Law to administer relief. On this decision an order was entered, in part, as follows: " Ordered, that you, the Common Council of the City of Buffalo, forthwith grant relief to Veterans of the Spanish War, and their dependents, only upon requests of the Joint Buffalo City Board, United Spanish War Veterans or of its Relief Committee, and it is further Ordered, that you restore to the possession of said Joint Buffalo City Board United Spanish War Veterans, or to its Relief Committee, all of its books, papers, vouchers and records, had and used by it in connection with the administration of veteran relief."

From this order the common council has appealed to this court. It seeks reversal on three grounds:

1. The common council has no power or jurisdiction over the acts commanded of it by the order of mandamus.

2. Veteran relief in Buffalo has always been administered according to the spirit of the applicable provisions of the Public Welfare Law.

3. The petitioner is not entitled to administer relief under article 14 of the Public Welfare Law.

A brief survey of the history of veterans' relief in this State will be quite helpful. The Grand Army of the Republic was the pioneer in this activity. " The Department of New York Grand Army of the Republic " was incorporated by chapter 11 of the Laws of 1885 as a body politic and corporate in fact and in name. The object of the corporation (§ 2, subd. 2) was " To assist such former comrades in arms who may need help and protection, and to extend needful aid to the widows and orphans of our deceased comrades." This was indeed a laudable enterprise. Apparently the demand for assistance was such that the Legislature in 1887 felt obliged to intervene. By chapter 706 of the Laws of 1887 there was passed " An act to provide for the relief of indigent soldiers, sailors and marines, and the families of those deceased." Section 1 of this act permitted towns and cities in this State to provide money " For the relief of indigent and suffering soldiers, sailors and marines, who served in the war of the rebellion, and their families, or the families of those deceased, who need assistance." The money thus appropriated was to be " drawn upon by the commander and quartermaster of any post of the Grand Army of the Republic in said city or town, upon the recommendation of the relief committee of said post, in the same manner as is now provided by law for the relief of the poor."

Section 3 provided that if the commander of any post undertook the relief of indigent veterans, before his acts should become operative, he must file with the city clerk of a city or the town clerk of a town notice that his post intended to undertake such relief work and a similar notice shall be filed annually thereafter. This act was amended by chapter 261 of the Laws of 1888 and chapter 598 of the Laws of 1896. These amendments are not important here. By this enactment the State of New York committed itself, and very properly so, to a policy of permitting veterans to administer relief to their comrades and to the widows and dependents of deceased comrades. Thus the law sought to screen from prying eyes the poverty of the valiant. It is for this principle petitioner is fighting.

By chapter 225 of the Laws of 1896 and subsequently by chapter 46 of the Laws of 1909 (Consol. Laws, chap. 42) the Legislature enacted a comprehensive " Poor Law." Into the former act it carried the spirit of chapter 706 of the Laws of 1887, *supra*, and enlarged upon the subject. (See § 80.) It also required the commander of a post to file an undertaking for the faithful and honest discharge of his duties. (See § 81.) By chapter 102 of the Laws of 1910, sections 80, 81, 82, 83 and 85 of chapter 46 of the Laws of 1909 were amended to include United Spanish War Veterans and to empower them to administer relief to their needy as was the case with the Grand Army of the Republic.

By chapter 565 of the Laws of 1929 the Poor Law of 1909 was repealed and in its place was enacted the Public Welfare Law, which constitutes chapter 42 of the Consolidated Laws. Sections 80 and 81 of the former Poor Law became sections 117 and 118 of article 14 of the Public Welfare Law.

Section 117 of article 14 of the Public Welfare Law provides in part: " Legislative bodies shall make appropriations and raise money for veteran relief in the same manner as for the care and relief of other persons in need of public relief and care. Such legislative bodies shall determine the method whereby such veteran relief fund shall be drawn upon by the organizations authorized to dispense veteran relief and may also pay to the chairman and such other employees of the relief committee of any of such organizations authorized to draw upon the veteran relief fund a reasonable sum for his services in connection with the administration of veteran relief.

" The following organizations shall be authorized to administer veteran relief:

" (a)   *   *   *

" (b)   Any camp of the United Spanish War Veterans

" (c–g)   *   *   *.

" Any memorial, relief or executive committee of similar purpose of any such post, camp or garrison shall have like powers and duties as any post, camp or garrison. Its chairman or treasurer and bureau of relief or relief committee shall exercise the same privilege and powers as the commander, quartermaster or treasurer and relief committee of a garrison, post or camp, on complying with the requirements of this article."

Section 118 of article 14 of the Public Welfare Law provides in part: " Applications for grants from the veteran relief fund shall be made in writing by the commander and quartermaster or treasurer or upon written recommendation of the relief committee of the above mentioned organizations.   *   *   *   The commander of any such post, garrison or camp which shall undertake

to administer relief under this article, before his acts shall become operative, shall file with the clerk of the town, city or county a notice that such post, garrison or camp intends to undertake such administration of relief. [Requirements of notice follow.] * * * In cities of over one hundred thousand inhabitants, exclusive of the city of New York, the notice and detailed statements shall be filed in duplicate with the comptroller of the city and the undertaking shall be approved by him. * * * In all cities, except the city of New York, where there is more than one organization of veterans or more than one post, camp or garrison of any organization, there shall be appointed and constituted a joint relief committee, to consist of one representative from each post, camp and garrison chosen in such manner as the post, garrison or camp shall direct, and one member from the auditing board of such city. In cities of not less than five hundred thousand, and not more than one million population, [in 1930 Buffalo had 573,076 population] there may be appointed a joint relief committee to consist of representatives from each post of the Grand Army of the Republic, a joint relief committee to consist of representatives from each camp of the United Spanish War Veterans * * *. All orders for relief shall be referred to such joint relief committee and no relief shall be granted except upon approval of the majority of such joint relief committee made at the next stated meeting. No post, garrison or camp shall be entitled to membership on the joint relief committee unless it has complied with all the provisions of this section and has appointed a representative to serve on such joint relief committee. In case of failure to comply with the above provisions, such a post, garrison or camp shall not be entitled to draw upon the veteran relief fund appropriated by the city."

By chapter 798 of the Laws of 1931 (McKinney's Consol. Laws of N. Y. book 65, Unconsol. Laws) the Legislature created a " Temporary Emergency Relief Administration." This act, as amended, provides for public welfare relief during the emergency therein declared, including relief for veterans *under existing laws.* (§§ 1, 10.)

Section 6 of article 2 of the Public Welfare Law provides that the board of social welfare of the city of Buffalo shall continue to possess all the rights, powers, authority, jurisdiction and duties in relation to providing for and defraying expenses of relief for veterans residing within said city. It is to be noted here that veteran relief does not come within the jurisdiction of the " Emergency Relief Bureau " created by Buffalo pursuant to subdivision 2 of section 12 of chapter 798 of the Laws of 1931, as amended by chapter 259 of the Laws of 1933 (McKinney's Consol.

Laws of N. Y. book 65, Unconsol. Laws). In other words, veteran relief is to be administered under the provisions of the Public Welfare Law.

Under section 11 of article 2 of the charter of Buffalo the legislative power of the city is vested in the common council. Under section 12 of article 2 of the charter the executive and administrative powers of the city are vested in the mayor and in the executive officers, departments, boards, commissions and other agencies of the city. Under sections 290 and 293 of article 15 of the charter the board of social welfare, consisting of five members, is made the head of the department of social welfare and is charged with furnishing aid and relief to persons formerly in the military or naval service of the United States and their families. Under section 39 of article 3 of the charter, the power to appropriate money is vested in the common council.

Obviously the board of social welfare, in conjunction with duly qualified veterans' organizations, and not the common council of Buffalo, is charged with the duty of furnishing aid and relief to persons formerly in the military or naval service of the United States, their dependents and families residing in Buffalo. Obviously the common council of Buffalo, when it made available the necessary fund for veterans' relief and provided the method of drawing upon it, discharged its full duty in respect to such relief. The common council has never had control or possession of petitioner's books, papers, vouchers or records. Petitioner has not established any right to relief against the common council; hence the order appealed from should be reversed, the motion denied and the proceeding dismissed. Having reached this conclusion, it is not necessary to determine the other questions presented on this appeal.

The Public Welfare Law places in the hands of duly qualified veterans' organizations the right, at their election, to participate in the administration of relief to veterans, their widows and dependents residing in Buffalo. Strict observance of this law, in letter and in spirit, is essential that the beneficent policy of the State, relative to the administration of veterans' relief may be made effective.

The order should be reversed on the law, the motion denied and the proceeding dismissed, without costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, TAYLOR and DOWLING, JJ.

Order reversed on the law, and motion denied, without costs.